David S. Sager
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
david.sager@us.dlapiper.com

*Attorneys for Plaintiff*
*La Quinta Franchising, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LA QUINTA FRANCHISING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>S HOSPITALITY LLC and RAJESH PATEL,<br><br>Defendants. | HONORABLE<br>Civil Action No.<br><br><br>**COMPLAINT**<br><br><br>Document Electronically Filed |

Plaintiff La Quinta Franchising, LLC, by its attorneys, DLA Piper LLP (US), complaining of S Hospitality LLC and Rajesh Patel (collectively, "Defendants"), says:

**THE PARTIES**

1. Plaintiff La Quinta Franchising, LLC ("LQF") is a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business in New Jersey. The sole member of LQF is Lodge Holdco III L.L.C., a limited liability company organized under the laws of Delaware, with its principal place of business in New Jersey. The sole member of Lodge Holdco III L.L.C. is La Quinta Intermediate Holdings L.L.C., a limited liability company organized under the laws of Delaware, with its principal place of business in New Jersey. The sole member of La Quinta Intermediate Holdings L.L.C. is La Quinta Holdings Inc., a

1

corporation organized under the laws of Delaware, with its principal place of business in New Jersey

2.     Upon information and belief, defendant S Hospitality LLC ("S Hospitality") is a limited liability company organized and existing under the laws of the State of Louisiana with its principal place of business at 11423 Lemonwood Drive, Denham Springs, Louisiana 70726.

3.     Upon information and belief, defendant Rajesh Patel ("Patel") is the sole member, manager, and agent of S Hospitality and a citizen of the State of Louisiana, having an address at 11423 Lemonwood Drive, Denham Springs, Louisiana 70726.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 inasmuch as both Plaintiff and Defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

5.     This Court has personal jurisdiction over S Hospitality by virtue of section 17.6.3 of the September 27, 2019 franchise agreement between LQF and S Hospitality (the "Franchise Agreement"), pursuant to which S Hospitality consented and waived objection to the personal jurisdiction of and venue in the "New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under [the Franchise] Agreement or between [LQF] and [S Hospitality]."

6.     This Court has personal jurisdiction over Patel pursuant to the terms of a guaranty executed by Patel (the "Guaranty") pursuant to which Patel acknowledged that section 17 of the Franchise Agreement applies to the Guaranty.

7.     Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement inasmuch as those provisions include express waivers to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

8. LQF and S Hospitality entered into the Franchise Agreement dated September 27, 2019 for the transfer of an existing, 142-room La Quinta® guest lodging facility located at 2333 South Acadian Thruway, Baton Rouge, Louisiana 70808, designated as Site No. 52880-15963-02 (the "Facility").  A true copy of the Franchise Agreement is attached hereto as **Exhibit A**.

9. On or about September 27, 2019, LQF and S Hospitality entered into a SynXis Subscription Agreement (the "SynXis Agreement") which governed S Hospitality's access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhancements to same.  A true copy of the SynXis Agreement is attached hereto as **Exhibit B**.

10. Pursuant to sections 1, 5, and 18.1 of the Franchise Agreement, S Hospitality was obligated to operate the Facility as a "La Quinta® Inn & Suites" or a "La Quinta® by Wyndham" guest lodging facility through May 30, 2038.

11. Pursuant to section 7 and Schedule C of the Franchise Agreement and section 5 of the SynXis Agreement, S Hospitality was required to make certain periodic payments to LQF for royalties, system assessment fees, taxes, interest, SynXis fees, and other fees (collectively, "Recurring Fees") during the term of the Franchise Agreement.

12. Pursuant to section 7.3 of the Franchise Agreement, S Hospitality agreed that interest is payable "on any past due amount payable to [LQF] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

13. Pursuant to section 3.6.4 of the Franchise Agreement, S Hospitality was required to prepare and submit monthly reports to LQF disclosing, among other things, the amount of gross

room revenue earned by S Hospitality at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to LQF.

14. Pursuant to section 3.6 of the Franchise Agreement, S Hospitality agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.6 and 4.7 of the Franchise Agreement, S Hospitality agreed to allow LQF to examine, audit, and make copies of the entries in these books, records, and accounts.

15. Pursuant to section 9 of the Franchise Agreement, S Hospitality could not lease the Facility, nor engage in any change, assignment, transfer, conveyance, or pledge of its interest, except with LQF's prior written consent. Any attempted transfer, assignment, conveyance, or pledge not in accordance with section 9 of the Franchise Agreement would be void as between LQF and S Hospitality, and would give LQF the right to terminate the Franchise Agreement.

16. Pursuant to sections 9.6 and 18.4 of the Franchise Agreement, S Hospitality agreed that, upon any transfer, the transferee was required to assume all of the obligation of S Hospitality under the Franchise Agreement.

17. Pursuant to section 11.2 of the Franchise Agreement, S Hospitality agreed that the Franchise Agreement would terminate if, among other reasons, S Hospitality discontinued operating the Facility as a La Quinta® guest-lodging facility or S Hospitality lost possession or the right to possession of the Facility.

18. Pursuant to section 12.1 and 18.3 of the Franchise Agreement, S Hospitality agreed that, in the event of a premature termination of the Franchise Agreement, S Hospitality would pay liquidated damages to LQF in accordance with the formulas specified in the Franchise Agreement.

19. Pursuant to Section 17.4 of the Franchise Agreement, S Hospitality agreed to "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."

20. Effective as of the date of the Franchise Agreement, Patel executed the Guaranty of S Hospitality's obligations under the Franchise Agreement. A true copy of the Guaranty is attached hereto as **Exhibit C**.

21. Pursuant to the Guaranty, Patel agreed, among other things, that upon a default by S Hospitality under the Franchise Agreement, he would immediately make each payment and perform, or cause S Hospitality to perform, each unpaid or unperformed obligation of S Hospitality under the Franchise Agreement.

22. Pursuant to the terms of the Guaranty, Patel agreed to pay the costs, including reasonable attorneys' fees, incurred by LQF in enforcement its rights or remedies under the Guaranty or the Franchise Agreement.

23. In or around November 2019, LQF learned that the Facility had been closed and the entrance had been boarded up with plywood. Shortly thereafter, LQF learned that the Facility had been sold to a third party without prior consent from LQF.

24. By letter dated November 12, 2019, a true copy of which is attached hereto as **Exhibit D**, LQF notified Defendants of its understanding that S Hospitality had ceased operating the Facility, that the discontinuation of operations was an event of immediate default, and that unless Defendants addressed the material default by November 18, 2019, the Franchise Agreement (and any related agreements) would terminate and Defendants would be responsible for various obligations under the Franchise Agreement.

25. Defendants did not respond to the letter from LQF or re-open the Facility by November 18, 2019.

26. Accordingly, by letter dated December 20, 2019, a true copy of which is attached as **Exhibit E**, LQF terminated the Franchise Agreement effective November 19, 2019 and advised Defendants of their post-termination obligations, including the payment of outstanding Recurring Fees and liquidated damages.

## FIRST COUNT

27. Plaintiff repeats and makes part hereof each and every allegation contained in paragraphs 1 through 26 of this Complaint.

28. Pursuant to sections 3.6 and 4.7 of the Franchise Agreement, S Hospitality agreed to allow LQF to examine, audit, and make copies of S Hospitality's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

29. The calculation of the monetary amounts sought by LQF in this action is based on the gross room revenue information supplied to LQF by S Hospitality and, to the extent there has been non-reporting, LQF's estimate as to the gross room revenue earned by S Hospitality.

30. The accuracy of this estimate cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements, and books from S Hospitality.

**WHEREFORE**, LQF demands judgment ordering that S Hospitality account to LQF for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility from the inception of the Franchise Agreement through the date of the termination of the Franchise Agreement.

## SECOND COUNT

31. Plaintiff repeats and makes part hereof each and every allegation contained in paragraphs 1 through 26 of this Complaint.

32. By letter dated December 20, 2019, LQF terminated the Franchise Agreement on November 19, 2019.

33. Sections 12.1 and 18.3 of the Franchise Agreement provide that, in the event of termination of the Franchise Agreement, S Hospitality shall pay liquidated damages to LQF within 30 days of termination.

34. As a result of the termination of the Franchise Agreement, S. Hospitality is obligated to pay LQF liquidated damages in the amount of $1,986,162.32, as calculated pursuant to sections 12.1 and 18.3 of the Franchise Agreement.

35. Notwithstanding LQF's demand for payment, S Hospitality has failed to pay LQF the liquidated damages as required in sections 12.1 and 18.3 of the Franchise Agreement.

36. LQF has been damaged by S Hospitality's failure to pay liquidated damages.

**WHEREFORE**, LQF demands judgment against S Hospitality for liquidated damages as a result of the premature termination of the Franchise Agreement in the amount of $1,986,162.32, together with interest, attorneys' fees, and costs of suit.

## THIRD COUNT

37. Plaintiff repeats and makes part hereof each and every allegation contained in paragraphs 1 through 26 of this Complaint.

38. By virtue of the premature termination of the Franchise Agreement, LQF sustained a loss of future revenue over the remainder of the term of the Franchise Agreement.

39. If the Court determines that S Hospitality is not liable to pay LQF liquidated damages as required by sections 12.1 and 18.3 of the Franchise Agreement, then, in the alternative, S Hospitality is liable to LQF for actual damages for the premature termination of the Franchise Agreement.

40. LQF has been damaged by S Hospitality's breach of its obligation to operate a La Quinta® guest lodging facility for the remaining term of the Franchise Agreement.

**WHEREFORE**, LQF demands judgment against S Hospitality for actual damages in an amount to be determined, together with interest, attorneys' fees, and costs of suit.

### FOURTH COUNT

41. Plaintiff repeats and makes part hereof each and every allegation contained in paragraphs 1 through 26 of this Complaint.

42. Pursuant to section 7 and Schedule C of the Franchise Agreement and section 5 of the SynXis Agreement, S Hospitality was obligated to pay Recurring Fees to LQF.

43. Despite its obligation to do so, S Hospitality failed to pay Recurring Fees due and owing under the Franchise Agreement in the current amount of $32,122.94.

44. S Hospitality's failure to pay the agreed Recurring Fees to LQF constitutes a breach of the Franchise Agreement and has damaged LQF.

45. S Hospitality's failure to pay Recurring Fees to LQF also constitutes unjust enrichment that has damaged LQF.

**WHEREFORE**, LQF demands judgment against S Hospitality for Recurring Fees due under the Franchise Agreement, in the current amount of $32,122.94, together with interest, attorneys' fees, and costs of suit.

## FIFTH COUNT

46. Plaintiff repeats and makes part hereof each and every allegation contained in paragraphs 1 through 26 of this Complaint.

47. Pursuant to the Guaranty, Patel guaranteed, among other things, that all of S Hospitality's obligations under the Franchise Agreement would be punctually paid and performed and that, upon S Hospitality's default, Patel would immediately make each payment and perform or cause S Hospitality to perform each obligation under the Franchise Agreement.

48. Despite his obligation to do so under the Guaranty, Patel has failed to make any payments or to perform or cause S Hospitality to perform each obligation required under the Franchise Agreement.

49. Pursuant to the Guaranty, Patel is liable to LQF for liquidated damages in the amount of $1,986,162.32 (or, in the alternative, actual damages) to be determined at trial, and for Recurring Fees due and owing under the Franchise Agreement, in the current amount of $32,122.94.

**WHEREFORE**, LQF demands judgment against Patel for all liquidated damages (or actual damages) and Recurring Fees due under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit.

Dated:  March 22, 2021

/s/ *David S. Sager*
David S. Sager
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway - Suite 120
Short Hills, New Jersey 07078
Tel.: (973) 520-2570
david.sager@us.dlapiper.com

*Attorneys for Plaintiff*
*La Quinta Franchising LLC*

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated:  March 22, 2021                    /s/ *David S. Sager*
                                          David S. Sager